UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
WALTER BOYD,                       :
                                   :
                   Plaintiff,      :
                                   :
        -against-                  :
                                   :
CITY OF NEW YORK PARKS AND         :
RECREATION,                        :
                                   :
                   Defendant.      :
-----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/1/08

PRO SE

05 Civ. 6962 (KMW)(THK)

**REPORT AND RECOMMENDATION**

**To: HON. KIMBA M. WOOD, United States District Judge.**
**From: THEODORE H. KATZ, United States Magistrate Judge.**

In this employment discrimination action, Plaintiff Walter R. Boyd ("Plaintiff"), proceeding pro se, sues Defendant New York City Department of Parks and Recreation ("DPR" or "Defendant"), pursuant to the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12112 - 12117, alleging that Defendant wrongfully terminated his employment and failed to accommodate his disability.

Presently before the Court is Defendant's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Defendant's Motion"). Defendant seeks judgment on the grounds that (1) Plaintiff has not established that he is disabled under the ADA, (2) Defendant has advanced legitimate, non-discriminatory reasons for Plaintiff's termination, (3) Plaintiff has not established that any adverse employment action took place under circumstances giving rise to an inference of discrimination, and (4) Plaintiff has not established that Defendant was on notice of his request for accommodation, that his alleged request for

1

accommodation was reasonable under the circumstances, or that he was not provided with a reasonable accommodation. Despite having notice of Defendant's Motion, Plaintiff never filed a response to it, and, accordingly, Defendant's Motion is unopposed.

Defendant's Motion was referred to this Court for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, this Court recommends that Defendant's motion for summary judgment be granted, and that Plaintiff's Complaint be dismissed with prejudice.

## BACKGROUND

The facts set forth herein are derived from Defendant's Statement of Undisputed Fact Pursuant to Local Rule 56.1 ("Def.'s 56.1 Stmt."), which relies on Plaintiff's deposition testimony, performance evaluations, Supervisor's Conferences, letters sent to Plaintiff, grievance decisions, and decisions from the New York State Human Rights Commission. In light of Plaintiff's failure to respond to Defendant's 56.1 Statement and other submissions, this Court accepts Defendant's factual submissions as true.[1]

---

[1] Pursuant to Local Civil Rule 56.2 of the Southern District of New York, Defendant provided Plaintiff with a Notice that stated, among other things, "if you do not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the material facts asserted by the defendant, the court may accept defendant's factual assertions as true." (See Notice to *Pro Se* Litigant Who Opposes A Motion For Summary Judgment, at 2.)

2

## Plaintiff's Employment History At DPR

Plaintiff commenced employment with the DPR, as a Seasonal Park Worker, in 1986. In or around 1989, Plaintiff was provisionally appointed as a full-time City Park Worker. In a Performance Evaluation covering the period January 1, 1996 through February 28, 1997, Plaintiff received an overall rating of "Conditional," in which his supervisor described him as "argumentative and indifferent" and as having a "poor attitude." Plaintiff received another "Conditional" rating for the period January 1, 1997 through June 30, 1997, and was reprimanded for not following DPR rules and regulations during Supervisor's Conferences on April 17, 1999, December 1, 2000, January 16, 2001, and January 18, 2001.

On December 27, 2000, Plaintiff received formal notification of disciplinary charges against him, which included: (1) operating a vehicle in a negligent and/or careless manner, (2) failure to promptly and/or properly report an accident involving a city/agency vehicle, (3) filing of a false report or false entry in a departmental record, (4) failure to promptly and properly report involvement in an accident to his direct supervisor, (5) failure to notify his borough office or respective administrative office of his inability to report to work, and (6) failure to report back to work after a scheduled meeting. Plaintiff was provided with an opportunity to present evidence in connection with these charges

3

during an Informal Conference on March 19, 2001, and, on April 4, 2001, Plaintiff was notified that he had been found guilty of all charges and specifications, and that a penalty of $800 (to be deducted from his next sixteen paychecks) was to be imposed.

On or about May 8, 2001, Plaintiff received another formal notification of disciplinary charges against him, which included: (1) failure to notify the borough office of his inability to report to work, (2) leaving his assigned work location without proper authorization on five separate occasions, (3) creating, approving and/or attesting to false entries in departmental records, for certification or substantiation purposes, by submitting false time cards on five separate occasions, and (4) engaging in activities that interfered with his assigned duties. Plaintiff was provided with another opportunity to present evidence on his behalf during an Informal Conference on May 18, 2001, and, on May 23, 2001, Plaintiff was notified that he had been found guilty of all charges and specifications, and that a penalty of $540 (to be deducted from his next six paychecks) was to be imposed.

On or about December 31, 2001, Plaintiff had another Supervisor's Conference during which he was reprimanded for not adhering to DPR rules and regulations. On or about March 22, 2002, Plaintiff received another formal notification of disciplinary charges against him for (1) refusing to appear before the Parks Advocate to answer questions regarding the performance of his

4

duties, (2) engaging in conduct prejudicial to good order and discipline, and (3) misappropriating, or allowing another to misappropriate, property, equipment, material, supplies, or records of the DPR. In an Amended Decision, dated July 31, 2002, Plaintiff was notified that he had been found guilty of all charges and specifications, and that he was to be suspended for ten days, without pay, from July 28, 2002 through August 10, 2002.

On or about October 8, 2002, DPR Manager Carlos Pabon ("Pabon") sent a letter to Deputy Advocate Thomas J. Griffin, with copies to Commissioner Dorothy Lewandowski ("Lewandowski"), Chief John Bauchman ("Bauchman"), and two Deputy Chiefs, regarding an incident in which Plaintiff verbally accosted Pabon in front of other employees, challenged him to a fight, and threatened Lewandowski and Bauchman. Pabon requested that Plaintiff be terminated immediately.

In two Performance Evaluations covering the calendar years 2002 and 2003, respectively, Plaintiff received additional "Conditional" ratings. On March 28, 2003, Plaintiff had another Supervisor's Conference during which he was again cautioned for failure to comply with DPR rules and regulations. It was also noted that Plaintiff had "used a lot of sick time/sick comp.," at least some of which was either not documented or not submitted, and that he was being placed on "Absence [C]ontrol Step 1." About a month later, on May 5, 2003, Plaintiff had yet another Supervisor's

5

Conference, at which point he was informed that he had reached "Step #2 on Absence Control" due to numerous instances of undocumented sick leave. On July 3, 2003, Plaintiff had another Supervisor's Conference during which he was notified that he had reached Step 3 of Absence Control, due to his hours of undocumented sick leave, and that the meeting constituted his "Final Warning" before being placed into sanction status. On December 9, 2003, Plaintiff had a final Supervisor's Conference, at which he was again cautioned about his failure to adhere to DPR rules and regulations, and his failure to follow the orders of his supervisor.

All said, between 1990 and 2003, Plaintiff had a total of fourteen Supervisor Conferences, ten of which related to his being absent without leave and/or failing to follow proper procedures. During the same period, Plaintiff was also found guilty of disciplinary charges and specifications, relating to violations of DPR standards of conduct, on three separate occasions. As a result of these guilty findings, Plaintiff was fined more than $1300 and suspended without pay for ten days.

## Plaintiff's Termination

On or about January 14, 2004, Plaintiff was notified of additional disciplinary charges against him, specifically, incompetence due to an excessive amount of absences, and that it was recommended that he be terminated. A grievance/appeal decision

6

dated April 8, 2004, stated, in pertinent part:

> It is the decision of the Review Officer,
> after careful consideration of the facts and
> the grievant's testimony in conference[,] that
> Mr. Boyd is guilty of all charges and
> specifications.    Further,  I find that the
> recommended penalty is justified and the
> grievant shall hereby be terminated close of
> business Friday, April 9, 2004.

(See Def.s' 56.1 Stmt., ¶¶ 31-32 & Ex. HH.)    Plaintiff was
subsequently terminated on April 9, 2004.

## Plaintiff's Worker's Compensation Injuries

During the course of his employment with DPR, Plaintiff
allegedly suffered three injuries.    On or about July 26, 1995,
Plaintiff had an on-the-job accident in which he slipped and
injured his right thumb.    Thereafter, on December 14, 1997,
Plaintiff claims to have had another on-the-job accident in which
he slipped and injured his right shoulder, knee, and thumb.
Finally, on October 1, 2001, Plaintiff claims that he slipped
again, this time injuring his left knee.    Plaintiff had surgeries
on his thumb and shoulder as a result of these incidents.

## Plaintiff's Disability Discrimination Claims

Plaintiff alleges that DPR failed to accommodate his
disabilities, which stemmed from the above-referenced injuries, by
not sending him to a DPR doctor and not assigning him to "light
duty."    During his deposition, Plaintiff initially testified that
he never made a request for an accommodation because, according to
him, "They don't have [accommodations] in the Parks Department,"

7

but then said that he did ask for "light duty." (See Def.'s 56.1 Stmt., Ex B., at 140-44.) DPR did, however, have an employment guide which set forth its policy regarding reasonable accommodations and identified the form an employee should use when requesting them. During his deposition, Plaintiff also vacillated on whether or not he had a disability, but maintained that his injuries did not affect his ability to perform his job duties, and could not specify anything that he could no longer do as a result of his injuries other than play sports and "squeeze on his left thumb." (See, e.g., id. at 113, 142-43, 174.)

Plaintiff also claims that he was discriminated against based on his disability because he was terminated for taking off too many days relating to his Worker's Compensation injuries, and because he was never sent to see a DPR doctor for evaluation.

## Plaintiff's Complaint With The SDHR

On or about August 30, 2004, Plaintiff filed a Charge of Discrimination with the New York State Division of Human Rights ("SDHR"), which was cross-filed with the United States Equal Opportunity Commission ("EEOC"). On January 20, 2005, the SDHR issued a Final Investigation Report, which found no probable cause to support the allegations of Plaintiff's complaint, and, on January 24, 2005, the SDHR issued a Determination And Order After Investigation, which dismissed Plaintiff's Complaint because it found that DPR had a "legitimate, non-discriminatory explanation

8

for plaintiff's termination. (See Def.'s 56.1 Stmt., Exs. LL at 5 & MM at 1.) On or about March 31, 2005, the EEOC adopted the findings of the SDHR and issued a Right to Sue letter.

This action ensued.

## DISCUSSION

### I. Summary Judgment Standards

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried, and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552 (1986); Salahuddin v. Goord, 467 F.3d 263, 272-73 (2d Cir. 2006); Williams v. Utica Coll. of Syracuse Univ., 453 F.3d 112, 116 (2d Cir. 2006). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, courts are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. See id. at 255, 106 S.Ct. 2505; Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004).

These standards pertain even where, as here, a motion for

9

summary judgment is unopposed. The Second Circuit has stated:

> [T]he failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment. Instead, the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law.

Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see also Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001) (where the non-moving party "chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material fact remains for trial"); Layachi v. Minolta Business Systems, Inc., No. 00 Civ. 0731 (DLC), 2001 WL 1098008, at *3 (S.D.N.Y. Sept. 18, 2001) (where "non-moving pro se party has failed to submit papers in opposition, summary judgment should not be granted automatically") (internal citations omitted).

In reviewing the motion, therefore, the court "may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." Vermont Teddy Bear, 373 F.3d at 244.

II. Application

The Americans with Disabilities Act ("ADA") provides that "[n]o covered entity shall discriminate against a qualified

10

individual with a disability because of the disability of such individual in regard to," inter alia, discharge from employment. 42 U.S.C. § 12112(a). There is no dispute that the DPR is a "covered entity" under the statute.

A plaintiff who raises a disability discrimination claim under the ADA bears the initial burden of establishing a prima facie case. See Graves v. Finch Pruyn & Co., 457 F.3d 181, 183-84 (2d Cir. 2006). In order to satisfy this burden, a plaintiff who has been terminated from employment must establish that (1) he is a disabled person within the meaning of the Act; (2) he is otherwise qualified to perform the essential functions of his job, either with or without reasonable accommodation; and (3) he was terminated because of his disability. See id. at 184 (citing Rodal v. Anethesia Group of Onondoga, 369 F.3d 113, 118 (2d Cir. 2004)); Boyce v. New York City Mission Society, 963 F.Supp. 290, 296 (S.D.N.Y. 1997). In the instant action, Defendant argues that Plaintiff has failed to meet his initial burden of establishing a prima facie case, because Plaintiff's condition did not render him "disabled" within the meaning of the ADA. For the reasons that follow, the Court agrees.

## A. Plaintiff Does Not Have A Disability Under The ADA

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment;

11

or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Although work -- the activity at issue here -- is considered a major life activity, <u>see</u> 29 C.F.R. § 1630.2(i), Plaintiff has failed to demonstrate that he was disabled under any of the three subsections of the ADA's definition.

### 1. Plaintiff Is Not Substantially Limited In A Major Life Activity

A major life activity is "substantially limited" only when an individual is (1) "[u]nable to perform a major life activity that the average person in the general population can perform" or (2) "[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). The regulations promulgated by the EEOC identify the following factors as relevant to the determination of whether an individual is substantially limited in a major life activity: "(i) The nature and severity of [the individual's] impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). The interpretive guidelines set forth by the EEOC further clarify that "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities."

12

29 C.F.R. pt. 1630 App., § 1630.2(j). See also Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 645-46 (2d Cir. 1998)(applying factors and citing interpretive guidelines); Boyce, 963 F.Supp. at 296 (same).

In light of these standards, Plaintiff's injuries to his thumbs, shoulder, and knee cannot be considered "disabilit[ies]" under the first prong of the ADA's definition of that term. Although Plaintiff had surgeries on his thumb and shoulder, Plaintiff testified his injuries did not affect his ability to perform his job duties. (See Def.'s 56.1 Stmt., Ex. B at 113, 121, 126, 143.) Plaintiff stated that he does have pain as a result of his injuries, and that he cannot "squeeze on his left thumb," but the only activities in which he claims he can no longer engage are basketball and baseball. (Id., at 113, 118, 121, 142-43.) Playing sports is not a major life activity. See, e.g., Manz v. Gaffney, 200 F. Supp. 2d 207, 214 (E.D.N.Y. 2002) (golf is not a major life activity). To the contrary, the regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, seeing, hearing, speaking and breathing." See 29 C.F.R. § 1630.2(j); see also Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 870 (2d Cir. 1998) (same). Consequently, by Plaintiff's own admissions, his injuries have not prohibited him from engaging in any major life activity, and have certainly not "substantially

13

impaired" his ability to engage in any such activity.[2]

Moreover, aside from Plaintiff's conclusory statement that he "will never be the same" because of the surgeries (see Def.'s 56.1 Stmt., Ex. B at 142), Plaintiff's only specific argument is that he lives with pain as a result of his surgeries and appears to argue that his pain constitutes a disability. Pain, however, in and of itself, does not qualify as disability under the ADA. See, e.g., Addoo v. NYC Bd. of Ed., No. 07 Civ. 0183, 2008 WL 681426, at *1-2 (2d Cir. Mar. 11, 2008) (employee's leg and back pain did not constitute substantial limitation on any major life activity, and thus was not a disability under ADA or Rehabilitation Act); Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983) ("disability requires more than mere inability to work without pain"); Kelly v. Rice, 375 F. Supp. 2d 203, 207-08 (S.D.N.Y. 2005) (chronic back and leg pain did not qualify as disability under the ADA); Boyce, 963 F. Supp. at 297 (allegations of chest pain insufficient to qualify as a disability under ADA); Hemion v. Astrue, No. 05 Civ. 0674, 2008 WL 833961, at *11 (N.D.N.Y. Mar. 27, 2008) ("The mere fact that he suffers from discomfort, however, standing alone, does not automatically qualify him as disabled.").

Consequently, Plaintiff does not have a disability based upon a substantial limitation of a major life activity.

---

[2] Plaintiff was able to return to work immediately after the surgeries and repeatedly testified that his condition did not impair his ability to do his job.

14

## 2. Plaintiff Cannot Show A Record of Impairment

Even without a showing of substantial limitation of a major life activity, the ADA's definition of disability can be satisfied by showing that an employer relied upon a record of an impairment that substantially limits one or more major life activities. See Colwell, 158 F.3d at 645-46 (citing 42 U.S.C. § 12102(2)(B)). According to EEOC regulations:

> This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities.

29 C.F.R. pt. 1630 App., § 1630.2(k). This provision was intended to "ensure that people are not discriminated against because of a history of disability." Id.

Plaintiff has not relied on this subsection of the definition, nor could he. As the Court already has determined, Plaintiff has not demonstrated that he ever had an impairment that substantially limited his activities while he was employed at DPR.

## 3. Defendant Did Not Perceive Plaintiff As Having An Impairment

Having determined that Plaintiff did not have an impairment that substantially limited a major life activity, or a record of such an impairment, Plaintiff can only qualify as disabled under the ADA if he was nevertheless regarded by DPR as having such an impairment. See 42 U.S.C. 12102(C). To succeed on the basis of a

15

"perceived disability" theory, Plaintiff would have to demonstrate that (1) DPR knew about his injuries; and (2) DPR viewed Plaintiff's condition as one that substantially limited his ability to work. See Colwell, 158 F.3d at 645-46; Scott v. Flaghouse, Inc., 980 F.Supp. 731, 735 (S.D.N.Y. 1997). Plaintiff has not advanced this theory, nor could he, because nothing in the record suggests that DPR viewed Plaintiff as suffering from such an impairment. While DPR was aware that Plaintiff had been injured, it had no reason to believe that Plaintiff's condition substantially limited his ability to work. Indeed, Plaintiff himself testified that he did not believe his injuries adversely affected his ability to perform his work duties. Plaintiff thus has failed to offer any evidence from which a finder of fact could reasonably infer that DPR perceived him as disabled under the ADA. See Colwell, 158 F.3d at 645-46.

\*    \*    \*

For all of the foregoing reasons, Plaintiff has failed to demonstrate that he was disabled under the ADA, and his claims for failure to accommodate his alleged disability, and wrongful termination based on his alleged disability, should be dismissed. The Court will also, however, briefly address why Plaintiff has failed to state a prima facie case of discrimination relating to his termination.

B.    Plaintiff Cannot Establish That Defendant's Non-Discriminatory Reasons For Its Actions Are A Pretext

Plaintiff's discrimination claims are deeply flawed on a substantive level because he has not provided competent evidence establishing a prima facie case of discrimination.

1.    Legal Standards

The standards for adjudicating a disability discrimination claim are well established and follow the burden shifting analysis first set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25 (1973) and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093 (1981). See also Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 169 (2d Cir. 2006) (applying McDonnell Douglas in ADA discrimination case). "'First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination.'" Swierkiewicz v. Sorema N. A., 534 U.S. 506, 510-511, 122 S. Ct. 992, 997 (2002) (quoting Burdine, at 252-253, 101 S. Ct. at 1093); see also Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002); Scaria v. Rubin, 117 F.3d 652, 653-654 (2d Cir. 1997). However, the burden of establishing a prima facie case is not an onerous one, "and has frequently been described as minimal." Scaria, 117 F.3d at 654; Mandell v. County of Suffolk, 316 F.3d 368, 378 (2d Cir. 2003). To establish a prima facie case of discriminatory disparate treatment, the plaintiff must show

17

1) that she belonged to a protected class; (2) that she was qualified for the position she held, or that she satisfactorily performed the duties required in her position; (3) that she suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination.

Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004); see also Collins, 305 F.3d at 118; Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant, who must then show that "some legitimate, nondiscriminatory reason" exists for the alleged discriminatory actions. McDonnell-Douglas, 411 U.S. at 802, 93 S. Ct. at 1824; see also Feingold, 366 F.3d at 152. If the defendant presents legitimate reasons for its actions, the plaintiff must then be given an opportunity to demonstrate that the defendant's stated reasons are merely a pretext for discrimination. See McDonnell-Douglas, 411 U.S. at 804, 93 S. Ct. at 1825; Burdine, 450 U.S. at 253, 101 S. Ct. at 1093; Patterson, 375 F.3d at 221. "If the defendant has stated a neutral reason for the adverse action, 'to defeat summary judgment . . . the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.'" Feingold, 366 F.3d at 152 (quoting Stern v. Trs. of Columbia Univ., 131 F.3d 305, 312 (2d

18

Cir. 1997)).

## 2. Application

The only alleged discriminatory act upon which Plaintiff seeks relief is his formal termination on April 9, 2004. (See Complaint at 3.)[3] For a variety of reasons, Plaintiff has not come close to establishing a prima facie case of discrimination with respect to his termination.

First, Plaintiff does not dispute that his employment history at DPR is checkered with (1) "Conditional" ratings on his performance evaluations, which characterized him as "argumentative and indifferent" and having a "poor attitude" (see Def.'s 56.1 Stmt., at Exs. D, E, W, and X)[4]; (2) numerous Supervisor's Conferences in which Plaintiff was warned for his failure to adhere to DPR rules and regulations (see id., at Exs. G, H, I, J, K, L, M,

---

[3] It appears that Plaintiff may have abandoned his failure to accommodate claim. During his deposition, Plaintiff provided inconsistent testimony on whether he even asked for an accommodation during his employment with DPR. In all events, however, the SDHR found that "there is no evidence in the record that [Plaintiff] requested an accommodation from [Defendant] which would have enabled him to perform his duties in a satisfactory manner." (See Def.'s 56.1 Stmt., Exs. LL at 4 & MM at 1-2.) Consequently, to the extent Plaintiff is still pursuing a failure to accommodate claim, this Court agrees that there is no evidence in the record to support such a claim. Moreover, as set forth above, Plaintiff did not suffer from a "disability," and thus, there is no platform for such a claim.

[4] A rating of "Conditional" means that "The employee has failed to meet the supervisor's expectations, but the expectations can be met with additional training and skills enhancement." (See, e.g., Def.'s 56.1 Stmt., at Ex. W.)

19

N, S, Y, AA, BB, and CC); and (3) guilty findings based on formal disciplinary charges (see id., at Exs. P, R, and GG). Although Plaintiff appears to assert that many of these marks on his record stem from discriminatory animus, there is no evidentiary basis for that assertion. For example, when asked how he believed he was discriminated against, Plaintiff responded "I was out absent and they terminated me for those days even though I had doctors notes." (See Def.'s 56.1 Stmt., Ex. B at 148.) But this argument completely ignores the fact that most of Plaintiff's regular and repeated absences (he was absent 162 days between 2002 and 2004) were authorized by DPR with pay (see id., Ex. KK ¶ 8); Plaintiff's termination stemmed, in large part, from the forty-six unauthorized, unexplained, and undocumented absences between August 2002 and June, 2003 (see id., at Exs. FF, LL at 4, MM at 1-2).

Consequently, Plaintiff has failed to rebut Defendants' proffered legitimate, non-discriminatory reasons for their disciplinary letters to, and subsequent termination of, Plaintiff, so as to demonstrate that such justifications were mere pretexts for discrimination. Indeed, despite being given numerous opportunities to do so, Plaintiff has never provided evidence that his forty-six undocumented absences were related to his injuries. (See id., Ex. MM at 1.) Thus, after repeated warnings, DPR justifiably terminated Plaintiff based on his failure to comply with procedures for documenting absences. This is clearly a

legitimate, non-discriminatory basis for Plaintiff's termination. Plaintiff has proffered no competent evidence, whatsoever, that suggests that Defendants' treatment of him was in any way related to his purported disability.

For this additional reason, Plaintiff's disability discrimination claim for wrongful termination should be dismissed.

## CONCLUSION

For the foregoing reasons, this Court recommends granting Defendant's motion for summary judgment, and dismissing Plaintiff's claims with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this report to file written objections. See also Fed. R. Civ. P. 6(a) and (d). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Kimba M. Wood, United States District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Wood. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Frank v. Johnson, 968 F. 2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992);

21

<u>Small v. Sec'y of Health and Human Servs.</u>, 892 F.2d 15, 16 (2d Cir.
1989).

Respectfully submitted,

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: June 30, 2008
New York, New York

Copies mailed to:

Walter R. Boyd
1420 Bronx River Avenue, Apt. 14B
Bronx, New York 10472

Camille D. Barnett, Esq.
Assistant Corporation Counsel
100 Church Street
New York, New York 10007